UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KIMBERLY BROOK,

        Plaintiff,

v.                                 CAUSE NO. 3:21cv833 DRL

TANNER PRENTICE,

        Defendant.

OPINION AND ORDER

Kimberly Brook was injured by Officer Tanner Prentice during her arrest. She claims Officer Prentice used excessive force in violation of the Fourth and Fourteenth Amendments and committed Indiana civil battery. Officer Prentice seeks summary judgment on both claims. The court grants summary judgment.

BACKGROUND

The following facts are those established by the record on summary judgment, as viewed in the light most favorable to the nonmovant. *See Lauth v. Covance, Inc.*, 863 F.3d 708, 710 (7th Cir. 2017). On October 27, 2019, Officer Prentice of the Logansport Police Department conducted a license plate check on a passing vehicle registered to Kimberly Brook [48-1 ¶ 4, 6-7]. The check returned a suspended license, as he confirmed Ms. Brook was the registered owner and driver of the vehicle [48-1 ¶ 7].

Officer Prentice initiated a traffic stop, and Ms. Brook pulled into an alleyway near her home [48-1 ¶ 8; 59-1 ¶ 1, 3]. Officer Prentice exited his vehicle, approached Ms. Brook's vehicle, asked for and received her license, and told her the stop related to her suspended driver's license [48-1 ¶ 10-13; 59-1 ¶ 5]. She said she was not driving and the keys were not in the ignition [48-1

¶ 15]. He then returned to his vehicle and confirmed Ms. Brook's license information with dispatch [48-1 ¶ 17-18; 59-1 ¶ 6]. He waited for another unit to arrive at the scene [48-1 ¶ 19].

Meanwhile, Ms. Brook left her vehicle and began walking away from the traffic stop, up to her house [*id.*; 59-1 ¶ 7]. She says she wasn't trying to flee; rather, she wanted to put her purse down inside and call a lawyer or her father [48-2 Tr. 14; 59-1 ¶ 8]. Officer Prentice says he exited his vehicle and commanded Ms. Brook to stop and return to her vehicle [48-1 ¶ 20]. According to Officer Prentice, Ms. Brook said she wasn't going to return to her car, he commanded her again to stop, and she retorted "no!" while running to the house [*id.* ¶ 21-24].

Ms. Brook admits she handed the officer her identification and then immediately walked toward the house, though she viewed it less as fleeing because she was walking on her property and questions whether the officer said she would be arrested [48-2 Tr. 47; 48-3 Tr. 30, 50, 80-81; 59-1 ¶ 8]. Officer Prentice says he pursued her on foot, commanding her to stop [48-1 ¶ 25]. She admits she doesn't recall many details from when she left her car to this point or may not have heard everything, but fairly from the officer's perspective she disregarded clear commands to stop [48-3 Tr. 33, 50, 80-81; *see also* 60 ¶ 23]. There is no body camera footage.

Officer Prentice says he decided to take Ms. Brook into custody to avoid the dangers associated with extracting a fleeing suspect from a home [48-1 ¶ 29-31]. Though he observed that Ms. Brook was physically larger than him, and he was the only officer at the scene [*id.* ¶ 34],[1] he attempted to take her into custody, either on the front lawn or by the front door [*id.* ¶ 32; 59-1

---

[1] At the time, Officer Prentice was 5'7" tall and approximately 185 pounds [48-1 ¶ 5]. Ms. Brook was 49 years old, 5'6" tall, 190 pounds [59-1 ¶ 10]. She says she was healing from shoulder surgery and had back pain, but nothing on this record indicates that the officer was aware of these conditions.

¶ 9]. He says he attempted to restrain and handcuff her, but she ripped and wrestled her arms away, so he used a "leg sweep maneuver" to take her down [48-1 ¶ 32-33, 36-37].

Ms. Brook says she felt bullied and just wanted to get someplace safe [48-3 Tr. 20-22]. She says Officer Prentice knocked her keys from her hand, overpowered her, pushed her ten feet back from the door, "slammed" her to the ground face down (which caused her to eat dirt and grass), and put a knee or foot on her back [48-2 Tr. 58; 48-3 Tr. 20; 59-1 ¶ 9, 11]. She says she hit the ground "so hard that [she] felt [herself] bounce back a little bit and felt a shock throughout [her] body and [her] ears started ringing" [59-1 ¶ 12; *see also* 48-3 Tr. 35].

Officer Prentice placed his body weight on her to control her movement [48-1 ¶ 38]. Other officers began to arrive [48-1 ¶ 40; 48-3 Tr. 48; 59-1 ¶ 14]. She couldn't see to identify who it was, but Ms. Brook says someone pushed her head into the dirt as they handcuffed her [48-2 Tr. 58; 48-3 Tr. 35, 46, 48]. She admits no one punched, kicked, or kneed her, but she "felt like [she] was being beat the shit out of" [48-3 Tr. 48; *see also* 60 ¶ 51]. After being handcuffed, she says several officers told her to "get up" and then one (she is not sure who) was "rough" pulling her up [48-3 Tr. 44-45].

By then, both sides agree Ms. Brook was compliant [48-1 ¶ 41; 60 ¶ 52]. She didn't ask for medical care at any time during or following this event, including to jail staff [48-1 ¶ 49; 60 ¶ 53]. Officer Prentice noticed no injury to Ms. Brook [48-1 ¶ 50]. She was subsequently convicted by a jury of four criminal charges in Indiana relating to these events, including resisting law enforcement, obstruction of justice, driving while suspended, and unlawful possession of a legend drug [48-4]. The Indiana Court of Appeals affirmed her convictions [48-5].

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in her favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant summary judgment when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

Ms. Brook advances two claims against Officer Prentice for his conduct during her arrest: excessive use of force under the Fourth Amendment (via the Fourteenth Amendment) and Indiana civil battery. Officer Prentice seeks summary judgment on both claims.

4

A.  *Excessive Use of Force*.

Ms. Brook alleges violations of her constitutional rights under 42 U.S.C. § 1983. Section 1983 is a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a § 1983 claim, Ms. Brook must show that she was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

Ms. Brook advances a Fourth Amendment claim. The Fourth Amendment prohibits "unreasonable searches and seizures" by the government to safeguard "[t]he right of the people to be secure in their persons." U.S. Const. amend. IV. The use of force in restraint of freedom is a "seizure" subject to the Fourth Amendment's reasonableness requirement. *Torres v. Madrid*, 592 U.S. 306, 311 (2021); *Tennessee v. Garner*, 471 U.S. 1, 7 (1985); *Avina v. Bohlen*, 882 F.3d 674, 678 (7th Cir. 2018). The Fourth Amendment applies to the States via the Fourteenth Amendment. *See Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992). In short, the use of force must be reasonable.

The law looks to the totality of the circumstances to decide whether any use of force was reasonable, including the crime's severity (or whether the suspect was under arrest or suspected of committing a crime), the immediate threat the suspect posed to the safety of officers or others, whether the suspect was armed, whether the suspect was interfering with an officer's duties, and whether the suspect actively resisted or attempted to evade arrest by flight. *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 427-28 (2017); *Graham*, 490 U.S. at 396; *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). The law asks whether the force used to seize the suspect was excessive in relation to the danger she posed if left unattended. *Mendez*, 581 U.S. at 427; *Dawson*, 803 F.3d at 833.

The standard is objective—the law places a reasonable officer in the exact scenario that the officer on scene faced and given what he knew, "rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The inquiry is whether the officer's actions were "objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Id.* at 397 (quotations omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97; *accord Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020) (same).

A law enforcement officer enjoys qualified immunity. This defense "shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Marshall v. Allen*, 984 F.2d 787, 791 (7th Cir. 1993) (quotations omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). If no constitutional right was violated, there is no need for further inquiry. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

If a violation can be established, the next step is to ask whether the right was clearly established. *Id.* This inquiry must be undertaken considering the case's particular circumstances. *Id.* "A constitutional right is clearly established for qualified-immunity purposes [when] the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 725 (7th Cir. 2013) (quotations and brackets omitted). "[A] case holding that the exact action in question is unlawful

6

is not necessary." *Alicea v. Thomas*, 815 F.3d 283, 291 (7th Cir. 2016). The plaintiff bears the burden of proving that the right is clearly established by either pointing to a similar case or "showing that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015) (quotations omitted).

Excessive force cases often present factual issues for the jury, at least when parties "tell different stories about what happened." *Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009). But when "there are sufficient undisputed material facts to establish that the officer acted reasonably under the circumstances, then the court must resolve the issue as a matter of law, rather than allow a jury to second-guess the officer's actions." *Dawson*, 803 F.3d at 833 (quotations omitted); *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003) (no second-guessing "if a reasonable officer making decisions under uncertainty and the press of time would have perceived a need to act"). This case is the latter.

A reasonable officer would know that Ms. Brook was driving a vehicle with a suspended license (based on registration information). She said she was not driving—something obviously false. A reasonable officer had probable cause to detain her and would know that he was dealing with someone less than candid. He would have had no idea at this point that she was near her home or, for that matter, what precise risks nearby homes might present.

Ms. Brook soon exited her vehicle and walked toward a house (hers it turns out). No reasonable jury could say other than this was fleeing. Anyone stopped for a suspended license and being checked by law enforcement would know she was detained and not free to leave. She ignored prompt commands from Officer Prentice to stop. She yelled she "didn't have time for

7

this" and "she wasn't going to get back in the car" as she walked away from the traffic stop. She may not have heard these commands or may not remember her comments, but that presents no triable issue when a reasonable officer in Officer Prentice's shoes would view her conduct as demonstrably noncompliant. And the law doesn't let her define flight merely because she was on her property. She was resisting—and no rational jury could say otherwise.

As Ms. Brook moved toward a residence seemingly to enter, she made the already-tense traffic stop more fluid and dangerous. A reasonable officer would have justified safety and other operational concerns, particularly as he pursued her alone. Quite aside from interfering with his duties, she could facilitate her flight or, worse yet, barricade herself into the home, or even secure a weapon. Quickly, she could make a simple traffic stop far more difficult and dangerous—for her and officers as well as any homeowners who might be inside (for no one knew yet this was even her home). That enclosed area was unseen and unfamiliar compared to the open yard, or better still her vehicle where she should have remained. *See Maryland v. Buie*, 494 U.S. 325, 333 (1990) (recognizing same concerns).

When Officer Prentice reached Ms. Brook, she physically resisted by wrestling her arms away. She seems to want to dispute this, but she designates no evidence that she was compliant. Quite to the contrary, she was convicted of "forcibly" resisting, obstructing, or interfering with a law enforcement officer—meaning she used "strong, powerful, violent means" to evade an officer's rightful exercise of his duties. *Spangler v. State*, 607 N.E.2d 720, 723 (Ind. 1993); *see also* Ind. Code § 35-44.1-3-1(a)(1). This record indisputably leaves this conclusion unchanged for a jury who would decide this excessive force claim.

8

A plaintiff who has been convicted of a crime cannot seek damages under § 1983 for harm "caused by actions whose unlawfulness would render a conviction or sentence invalid" so long as the conviction stands, *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), and Ms. Brook's conviction was affirmed. Though this bar would not inevitably apply to all aspects of her Fourth Amendment excessive force claim, *see Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014); *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010), insofar as Ms. Brook might claim that she never physically or forcibly resisted Officer Prentice, this would be barred because it is incompatible with her criminal conviction, *see Evans*, 603 F.3d at 364 (same conclusion).

Force is "only reasonable when it is proportional to the threat posed." *Alicea*, 815 F.3d at 288. Noncompliance with orders or other passive resistance requires only minimal use of force, but active resistance or struggling with officers may warrant escalation. *See Phillips v. Cmty. Ins.*, 678 F.3d 513, 524-25 (7th Cir. 2012); *see also Graham*, 490 U.S. at 396. Officer Prentice was entitled to use proportional force when arresting Ms. Brook due to her resistance, which had now persisted into something physical. No reasonable jury could call pushing her from the doorstep and the takedown to the ground, here under all the circumstances, excessive force. *See, e.g., Johnson v. Rogers*, 944 F.3d 966, 970 (7th Cir. 2019) (no excessive force when officer used leg sweep or kick to gain control of noncompliant handcuffed arrestee); *Smith v. Ball State Univ.*, 295 F.3d 763, 770-71 (7th Cir. 2002) (attempted-knee-strike-turned-tackle was minimal force to subdue unresponsive suspect in grips of two other officers and reasonably perceived as resisting).

A takedown rather than a leg strike would likely be less force and pose less risk of injury to someone near 50. Officer Prentice never used a sidearm, baton, pepper spray, or TASER. The incident was brief, and from all accounts she was not kept pinned or prone for long. *See, e.g.,*

*Padula v. Leimbach*, 656 F.3d 595, 604 (7th Cir. 2011) (reasonable to put someone resisting arrest in prone position to prevent injury to suspect and officers).

Ms. Brook says she felt beat up but denies that Officer Prentice (or anyone else) ever kicked, kneed, or punched her. She says she ate dirt and grass, which on this record seems reasonably incident to the takedown in the yard. To the extent the record might leave a question whether this occurred later when officers endeavored to handcuff her, an officer may reasonably use his body to gain or maintain control of a noncompliant suspect. *See, e.g., Cherry v. Washington Cnty.*, 526 F. Appx. 683, 687-88 (7th Cir. 2013) (no excessive force when officer pushed arrestee to ground and pressed his face against the road when it caused only temporary pain or discomfort). And notably, Ms. Brook cannot say, and has adduced no evidence, that Officer Prentice was the one who forced her face to the dirt; he cannot be held responsible for some other officer's actions. *See Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017). Perhaps for these reasons, Ms. Brook never argues that Officer Prentice used excessive force through some on-the-spot dirt-eating punishment. The same holds true for someone else who may have been "rough" in bringing her to her feet, which likewise has not been argued. Though not always an ironclad rule, the court remains confined to the arguments today. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375-80 (2020) (discussing party presentation rule).

This record falls short of establishing for a reasonable jury that Officer Prentice violated Ms. Brook's Fourth Amendment rights in his use of force on this occasion—namely, in the push and use of a leg sweep or in keeping Ms. Brook prone while she was handcuffed. Her § 1983 claim necessarily fails. She has not shown a constitutional violation.

In addition, qualified immunity would apply because "[m]any decisions hold that there is no clearly established rule forbidding a clean takedown to end mild resistance." *Johnson*, 944 F.3d at 969 (citing cases). Ms. Brook has not countered this defense with anything but the highest of generality within Fourth Amendment jurisprudence. *See id.* ("The principle 'do not use excessive force' is clearly established but does not tell an officer what kinds of force, in which situations, *are* excessive [so] does not negate immunity."). She has not met her burden on the qualified immunity defense, nor really argued it. Nothing here was so obviously disproportionate as to erode qualified immunity. The court grants summary judgment.

B. *Indiana Civil Battery.*

Ms. Brook also brings a state law battery claim. Though often the practice is to remand a state claim after all federal claims have been dismissed, that would be inefficient today. After all, the court must grant summary judgment on this state claim because the same objective reasonableness standard that governs the Fourth Amendment claim governs this Indiana battery claim. *See O'Bannon v. City of Anderson*, 733 N.E.2d 1, 3 (Ind. Ct. App. 2000); *Tom v. Voida*, 654 N.E.2d 776, 780, 787 (Ind. Ct. App. 1995). In addition, her claim is subject to the Indiana Tort Claims Act, and she offers no evidence that she complied by sending the requisite notice in a timely manner. *See* Ind. Code §§ 34-13-3-8, 34-6-2-110; *Stone v. Wright*, 133 N.E.3d 210, 216-17 (Ind. Ct. App. 2019); *Weaver v. Elkhart Cmty. Sch. Corp.*, 95 N.E.3d 97, 101 (Ind. Ct. App. 2018).

## CONCLUSION

For these reasons, the court GRANTS the summary judgment motion [47] and DIRECTS entry of judgment for Officer Prentice. This order terminates the case.

SO ORDERED.

February 5, 2025                                                      *s/ Damon R. Leichty*
                                                                                        Judge, United States District Court